# **<u>EXHIBIT A</u>**

1  Lincoln D. Bandlow, Esq. (CA #170449)
   lincoln@bandlowlaw.com
2  **Law Offices of Lincoln Bandlow, P.C.**
   1801 Century Park East, Suite 2400
3  Los Angeles, CA  90067
   Phone: (310) 556-9680
4  Fax: (310) 861-5550

5  Attorney for Plaintiff
   Strike 3 Holdings, LLC

6

7

8
                    **UNITED STATES DISTRICT COURT**
9
                  **NORTHERN DISTRICT OF CALIFORNIA**
10

11 STRIKE 3 HOLDINGS, LLC,                    Case No.: 3:22-cv-03328-SI

12                        Plaintiff,          **DECLARATION OF DAVID
                                              WILLIAMSON IN SUPPORT OF
13 vs.                                        PLAINTIFF'S *EX-PARTE* APPLICATION
                                              FOR LEAVE TO SERVE A THIRD-
14 JOHN DOE subscriber assigned IP address    PARTY SUBPOENA PRIOR TO A RULE
   98.42.130.181,                             26(f) CONFERENCE
15
                        Defendant.
16

17

18

19

20            [Remainder of page intentionally left blank]

21

22

23

24

25

26

27
                                  i
28

---

Declaration of David Williamson in Support of Plaintiff's *Ex-Parte* Application
for Leave to Serve Subpoena Prior to a Rule 26(f) Conference
                                              Case No. 3:22-cv-03328-SI
                          **EXHIBIT A**

## DECLARATION OF DAVID WILLIAMSON IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE

1.      My name is David Williamson.

2.      I am over the age of 18 and competent to make this declaration.  The facts stated in this declaration are based upon my personal knowledge and, if called and sworn as a witness, I can and competently will testify to all matters contained herein.

### Education and Career

3.      Between 1983 to 1986, I attended Bispham Technical College located in Bispham, Blackpool, United Kingdom, where I studied computer science.

4.      Since completing my studies at Bispham Technical College, I have acquired over 34 years of experience in the Information Technology industry.

5.      My experience ranges from working as a service engineer, a hardware engineer, a developer, a team leader, an IT consultant, an eInfrastructure manager, an Internet consultant, Infrastructure Practice Manager, a Security & Networking Specialty Manager, and a Software Consulting Practice Manager.   I was also a UK board member for Sun Microsystems Professional Services Division.

6.      I have worked in many industries, which significantly include the UK Department of Defense (British Aerospace), Sun Microsystems, and AXA Insurance.

7.      As a result of my experience, I have significant technology skills that cross the Microsoft & Unix / Linux platforms.   These skills are primarily in the areas of software development, security, and networking.

8.      I am highly competent in networking technologies and information security, and adept at programming in various languages including Java, Javascript, PHP, C, and Assembler.

9.      I also possess significant skills in Databases, Cloud Computing, and other Web technologies.

10.      I am currently self employed as an Information Systems and Management Consultant.  In this role, I work with clients to help them tackle the challenges involved with

1

DocuSign Envelope ID: 56A523AA-6888-4925-A9FC-245A5CD523F2

scaling their Information Technology Applications.   The process involves using Agile methodologies to help companies design and re-factor their applications to use the latest technology.

### Strike 3 Holdings, LLC Background

11.     As an Information Systems and Management Consultant, I am employed as an independent contractor by Strike 3 Holdings ("Strike 3" or "Plaintiff"), a Delaware limited liability company located at 2140 S. Dupont Hwy, Camden, DE.

12.     I have been working with Strike 3 since its inception.   I undertake the role of Chief Technology Officer (CTO).   Because of the nature of my role with the company, I am generally familiar with all aspects of the company, and with full knowledge of its Information Technology Systems.

13.     Strike 3 owns the intellectual property to the *Blacked*, *Blacked Raw, Tushy*, and *Vixen* adult brands, including the copyrights to each of the motion pictures distributed through *Blacked*, *Blacked Raw, Tushy* and *Vixen* and the trademarks to each of the brand names and logos.   Strike 3 is owned entirely by General Media Systems, LLC and has existed since 2015. I also undertake the role of Vice President of Technology for General Media Systems, LLC.

14.     Our company has approximately 15 million visitors to our websites per month and a loyal following.

15.     Our company's philosophies are important.

16.     We always strive to pay artists and models an amount above that being paid by other companies.   Indeed, we are known for paying our performers the highest rates ever recorded in the industry.   Empowering the artists -- and especially the women we work with -- is at the core of our company's philosophy.

17.     We focus on delivering to our subscribers and fans superior quality adult films and a wonderful customer experience available for a monthly subscription at a fair price.   When Strike 3 first began offering this service, conventional wisdom held that it was destined to fail; that people would refuse to pay extra to support the production of high quality adult content

DocuSign Envelope ID: 56A523AA-6888-4925-A9EC-245A5CD523E2

they enjoy when lesser quality films are available for free. Now, we have a substantial and loyal customer base that recognize the value of paying a fair price to support the artists that provide the works they enjoy.

18.     We provide jobs for nearly 100 people worldwide.  We provide good benefits including health care coverage and have an extremely positive company culture.   Our employees include producers, production managers, video editors, marketing specialists, accountants, stylists, content managers, and a full team of highly skilled software developers, system administrators, and a quality assurance department.

19.     Our movies are known for having some of the highest production budgets of any in the industry.  We invest in and utilize state of the art cinematic equipment.  We film using Hollywood industry standards.  And, as our subscriber base grows, we always seek to find ways to invest in value for our customers.

20.     Because of this, we have a subscriber base that is one of the largest of any adult site in the world.

21.     We are also currently the number one seller of adult DVDs in the United States.

22.     Our content is licensed throughout the world, which includes most major cable networks.

23.     Our success has not gone unnoticed.  Indeed, we are very proud that our unique cinematic films have won many awards.   Some of them include:

     a.   Best New Studio (XBIZ, 2017)

     b.   Studio of the Year (XBIZ, 2018)

     c.   Best Cinematography (AVN, 2016)

     d.   Director of the Year (AVN, 2016-2018 ; XBIZ, 2017-2018)

     e.   Best Director – (XRCO, 2016-2017)

     f.   Best Membership Website (AVN, 2016-2017)

     g.   Adult Site of the Year – (XBIZ, 2015-2017)

     h.   Best marketing campaign – company image (AVN, 2016-2017)

3

DocuSign Envelope ID: 56A523AA-6888-4925-A9EC-245A50D523F2

i.   Marketing Campaign of the Year (XBIZ, 2018)

j.   Greg Lansky - Lifetime Achievement Award (Nightmoves)

k.   Vignette Series of the Year (XBIZ, 2018)

24.     We also are routinely featured in mainstream media.  Forbes,[1] The Daily Beast,[2] CBC Radio,[3] Rolling Stone,[4] AdAge,[5] and Jezebel[6] have all published substantial profiles on us.

25.     We are proud of our impact on the industry.  We have raised the bar in the industry - leading more adult studios to invest in better content and higher pay for performers.  That is a testament to the entire team, the company we have built, and the movies we create.

26.     Unfortunately, piracy is a major threat to our company.  We can compete in the industry, but we cannot compete when our content is stolen.

27.     We have discovered that when we put videos online for paid members to view, it is often less than a day before our movies are illegally available to be downloaded on torrent websites.  We have attempted to identify the initial seeders of the pirated content.  However, due to our significant customer base, it is virtually impossible to 100% identify the actual individual who initially distributes our content via the torrent network.  We do regularly scan our records for people who appear to be abusing our service, and take action to prevent further abuse.

---

[1] "How One Pornographer is Trying to Elevate Porn to Art," *Forbes,* July 20, 2017 https://www.forbes.com/sites/susannahbreslin/2017/07/20/pornographer-greg-lansky-interview/#2301d3ae6593

[2] "Meet the Man Making Porn Great Again," *The Daily Beast*, February 18, 2017 http://www.thedailybeast.com/meet-the-man-making-porn-great-again

[3] "Porn-o-nomics: How one director is making a fortune by defying conventional wisdom," *CBC Radio*, February 24, 2017 http://www.cbc.ca/radio/day6/episode-326-sanctuary-cities-la-la-land-vs-jazz-hollywood-in-china-porn-o-nomics-and-more-1.3994160/porn-o-nomics-how-one-director-is-making-a-fortune-by-defying-conventional-wisdom-1.3994167

[4] "Versace, Champagne and Gold: Meet the Director Turning Porn Into High Art." *RollingStone*, April 15, 2018  https://www.rollingstone.com/culture/culture-features/versace-champagne-and-gold-meet-the-director-turning-porn-into-high-art-629908/

[5] "Kanye West's Favorite Pornographer is a Master of SFW Marketing," *AdAge*, August 17, 2018 https://adage.com/article/cmo-strategy/sfw-pornographer/314604

[6] "The One Percent Fantasies of Greg Lansky's Vixen" *Jezebel*, January 9, 2019 https://jezebel.com/jerking-off-to-capitalism-the-1-percent-fantasies-of-g-1829976586

4

DocuSign Envelope ID: 56A523AA-6898-4925-A9EC-245A5CD523E2

28.     The issue of pirated content is a significant one; the Global Innovation Policy Center released a report[7] in June 2019, and found that digital video piracy conservatively causes lost domestic revenues of at least $29.2 billion and as much as $71.0 billion.  It also found that it results in losses to the U.S. economy of between 230,000 and 560,000 jobs and between $47.5 billion and $115.3 billion in reduced gross domestic product (GDP) each year.  We certainly feel this pain, as do our paying customers, who are cheated out of access to even more films that our company does not have the resources to make when pirates freeload off the system instead of contributing their fair share to pay for the works they enjoy.

29.     We put a tremendous amount of time, effort and creative energy into producing and distributing valuable content for our paid customers.  It crushes us to see it being made available for free in just minutes.

30.     Our movies are typically among the most pirated television shows and movies on major torrent websites.

31.     We send on average 50,000 Digital Millennium Copyright Act notices a month but it does virtually nothing to stop the rampant copyright infringement.

32.     The most, if not the only, effective way to stop the piracy of our movies on BitTorrent networks is to file lawsuits like this one.

33.     We are mindful of the nature of the works at issue in this litigation.  Our goal is not to embarrass anyone or force anyone to settle unwillingly, especially anyone that is innocent.  We are proud of the films we make.  We do not want anyone to be humiliated by them.

34.     Because of this, our company and our legal team strives to only file strong cases against extreme infringers.  Each lawsuit seeks to stop only those infringers who engage not only in illegal downloading, but also in large scale unauthorized distribution of our content.

---

[7] "IMPACTS OF DIGITAL VIDEO PIRACY ON THE U.S. ECONOMY" https://www.theglobalipcenter.com/wp-content/uploads/2019/06/Digital-Video-Piracy.pdf

5

35.     We also do not seek settlements unless initiated by the defendant or their counsel.  We do not send demand letters.

36.     We are careful not to proceed with a case against a defendant unless we feel we have a strong case and a good faith basis for doing so.  We will not pursue defendants that provide substantiated exculpatory evidence.  Nor will we pursue defendants that have proven hardships.  Our clear objective is to be mindful and reasonable with each case.

37.     We are a respected entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses.  Our goal is to deter piracy and redirect the infringement back into legitimate sales.  Proceeds we receive from settlements go back into making our company whole.

38.     We believe a consumer's choice of what content to enjoy, whether it be adult entertainment or otherwise, is a personal one to that consumer.  Therefore, it is our policy to keep confidential the identity of not only our subscribers, but even those we are pursuing for copyright infringement.  We typically only reveal a defendant's identity if the defendant does not contact Strike 3 to participate in the request to the Court to permit them to proceed anonymously, or if the Court in a particular action does not allow a defendant to proceed anonymously.

39.     Our copyrights are the foundation of our livelihood.  Our copyrights enable us to open our office doors each day, pay employees, make a difference in our community, and create motion pictures that raise the industry standard.  We have to protect them.

### Strike 3 Holdings, LLC's Infringement Detection System

40.     I oversaw the design, development, and overall creation of the infringement detection system called VXN Scan ("VXN") which Strike 3 both owns and uses to identify the IP addresses used by individuals infringing Plaintiff's movies via the BitTorrent protocol.

41.     It took approximately six months to develop VXN.

42.     As explained below, VXN has several components and processes.

6

**The Torrent Collector/Scrapper**

43.     The first component of VXN is the Torrent Collector.

44.     Torrent websites host .torrent files or list magnet links referring to .torrent files, which contain torrent metadata.  In order to download content through BitTorrent, a user will first download a BitTorrent client (*i.e.*, software that enables the BitTorrent protocol work), and then will search for and acquire .torrent files from  torrent websites.  The BitTorrent client reads the .torrent file's metadata, specifically its "Info Hash,"[8] and uses that information to download pieces of the desired computer file that correlate to the .torrent file previously acquired.

45.     The Torrent Collector is software that conducts lexical searches of Plaintiff's titles within well-known torrent websites.

46.     The Torrent Collector is serviced at Amazon Elastic Compute Cloud ("Amazon EC2").  Amazon EC2 is a web service that provides secure, resizable compute capacity in the cloud.[9]

**The Downloader**

47.     The second component of VXN is a software called Downloader.  After the Torrent Collector's lexical search yields a match (*i.e.*, it has located a .torrent file which establishes that the correlating targeted computer file contains the title of one of Plaintiff's works), the Downloader subsequently downloads the .torrent file and a full copy of the targeted computer file from the whole BitTorrent swarm.  To be clear, the Downloader does not obtain a full copy from a single infringer.

48.     The targeted computer file is downloaded for human audiovisual verification purposes only.  Indeed, downloading the entire targeted computer file is necessary so that Strike 3 can confirm that the targeted computer file, related to a specific .torrent file, is in fact an

---

[8] The "Info Hash" is the data that the BitTorrent protocol uses to identify and locate the other pieces of the desired file across the BitTorrent network. To be clear, the "Info Hash" is not the hash value of the complete file nor its correlating .torrent file. Instead, it is a unique identifier contained in the metadata of the .torrent file that provides a "map" so that those pieces can be collected and re-assembled into a complete file (i.e., a playable movie) by a BitTorrent client.

[9] *See* https://aws.amazon.com/ec2/

7

infringing copy of a copyrighted work it owns.

49.    It is impossible for the Downloader to re-distribute or upload any of the retrieved data, since, as written, the program does not contain such a function. To be clear, the downloader will never upload data to other computer systems in the BitTorrent network.

50.    The Downloader then stores the .torrent file and a full copy of the targeted computer file directly onto a cloud platform account provided by Amazon Web Services ("AWS").

51.    The Downloader is also serviced at Amazon EC2.

**The Proprietary Client**

52.    The third component of VXN is a proprietary BitTorrent client ("Proprietary Client").

53.    After the Downloader downloads the .torrent file and targeted computer file as described above, the Proprietary Client connects to peers within the swarm associated with that infringing computer file.  The Proprietary Client connects to these peers using a TCP/IP connection.  This connection cannot be spoofed.

54.    Once the connection is established, the Proprietary Client begins the process of downloading a piece or multiple pieces of the infringing computer file from other computers connected to the Internet through IP addresses, which are offering pieces of the infringing computer file for download (i.e., "peers" in the BitTorrent "swarm"). The Proprietary Client accomplishes this by using the Info Hash value in the metadata of the .torrent file, which has already been confirmed to correlate with a digital media file that infringes upon one of Strike 3's copyrighted works. The BitTorrent protocol ensures that, because the Proprietary Client requests file pieces based on this specific Info Hash value, it only receives pieces of the related digital media file. In short, it repeatedly downloads data pieces from peers within the BitTorrent network which are distributing Plaintiff's movies.

55.    In this way, the Proprietary Client emulates the behavior of a standard BitTorrent client.  However, there are two ways in which the Proprietary Client differs from a standard

8

DocuSign Envelope ID: 56A523AA-6898-4925-A9E9-245A5CD523F2

BitTorrent client. The first is that the Proprietary Client is *incapable* of distributing the infringing computer files. Thus, it is only able to download data from peers in a swarm and is unable to upload any data to the peers in a swarm. The second exception is that the Proprietary Client is disabled from storing any of the content obtained from the transaction and the Proprietary Client does not itself record evidence of infringement.

56.     The Proprietary Client operates on an independent physical server which is located in a professional data center in Florida.

### PCAP Recorder / Capture Card

57.     The fourth component of VXN is the PCAP Recorder, which uses a physical PCAP Capture Card.

58.     Data sent through the Internet is delivered in the form of "packets" of information. PCAP stands for "Packet Capture." A PCAP is a computer file containing captured or recorded data transmitted between network devices.

59.     In this case, Plaintiff sought to record numerous infringing BitTorrent computer transactions in the form of PCAPs. The PCAPs evidence particular IP addresses connecting to the Proprietary Client and sending pieces of a computer file (which contains an infringing copy of Plaintiff's works) to the Proprietary Client.

60.     Strike 3's need to record and secure PCAPs is logical since PCAPs contain specific BitTorrent transaction details of evidentiary value.

61.     Indeed, a PCAP contains the Internet Protocol (IP) Addresses used in the network transaction, the date and time of the network transaction, the port number[10] used to accomplish each network transaction, and the BitTorrent client used to accomplish the network transaction. All of the above can be useful in identifying an infringer.

62.     A PCAP also identifies the Info Hash value that was used to obtain the transacted

---

[10]   A port is a communication endpoint. Ports are identified for each protocol and address combination by the port number.

DocuSign Envelope ID: 56A523AA-6898-4925-A9E5-245A5CD523F2

piece. This information identifies the data that was shared in the recorded transaction as a constituent part of a specific digital media file, which, as described above, has been confirmed to be a file that infringes upon one of Strike 3's copyrighted works.

63.     In order to record the PCAPs in real-time for all BitTorrent transactions which the Proprietary Client is involved in, VXN uses a Capture Card called Link™ NT40A01 SmartNIC.  This is a network capture card that was developed and manufactured by Napatech™.

64.     Napatech is the leading provider of reconfigurable computing platforms.[11]  It develops and markets the world's most advanced programmable network adapters for network traffic analysis and application off-loading.[12]  Napatech's "family of SmartNICs enables government and military personnel to capture all the data running through their networks[.]"[13]

65.     Within VXN, the Capture Card is connected to the Proprietary Client's network connection via a passive network tap.  A passive network tap allows the Capture Card to record perfect copies of all traffic without actively interacting with any other components within the network (i.e., the Proprietary Client).  In this manner, the Capture Card retrieves an identical copy of each and every single network packet which is sent[14] and received by the Proprietary Client.

66.     The PCAP Recorder receives that data from the Capture Card and streams the PCAP files directly onto a cloud platform account provided by AWS.  More specifically, the cloud platform is known as Amazon Simple Storage Service ("Amazon S3").  Within this Amazon S3 account, Plaintiff has enabled the object lock "legal hold" feature.  This feature "prevents an object version from being overwritten or deleted […] [which] remains in effect

---

[11] *See* https://marketing.napatech.com/acton/attachment/14951/f-cce2aadf-5242-49dd-b515-31bd48077066/1/-/-/-/-/Fort%20Huachuca%20Press%20Release.pdf

[12] *See* http://www.networkallies.com/partners/napatech

[13] *See* https://finance.yahoo.com/news/napatechs-family-smartnics-helps-state-130700070.html

[14] The Proprietary Client does not send any data to BitTorrent peers.  But even if it did, the Capture Card would record such transactions.

until removed."[15]  Thus, this ensures that the files cannot be modified or deleted.

67.     Plaintiff's "legal hold" feature is currently set for three years.  Therefore, the PCAPs cannot be modified or deleted for three years from the date and time the PCAP was first streamed onto the Amazon s3 cloud.

68.     To be clear, no PCAP data is stored locally on the Capture Card.  Rather, the PCAP data is streamed in real time and stored directly onto Amazon S3.

69.     The Capture Card is synchronized with a time server using the Global Positioning System (GPS).  This ensures that the dates and times within the PCAPs are accurate.  Each recorded transaction is recorded in milliseconds (thousandths of a second).

70.     The independent physical server housing the Capture Card and PCAP Recorder is also located at a professional data center in Florida.

### The PCAP Stamper

71.     The fifth component of VXN is the PCAP Stamper software.

72.     Every 24 hours the PCAP Stamper[16] sends an index of every PCAP file VXN has *ever* recorded within the last 24 hours to a 3rd party provider called DigiStamp, Inc.[17]  DigiStamp, Inc. then signs the index with a qualified timestamp.  This ensures that the PCAPs existed on the date and time listed in the timestamp, and that it has not been modified as of the date and time listed in the timestamp.

73.     The PCAP Stamper is located on Amazon EC2.

---

[15] *See* https://docs.aws.amazon.com/AmazonS3/latest/dev/object-lock-overview.html#object-lock-legal-holds

[16] Though we termed this software the "PCAP Stamper," this term is not descriptive since it is DigiStamp, Inc. that actually signs the PCAP index with a qualified timestamp.

[17] DigiStamp, Inc. provides "tools to prove the authenticity and integrity of electronic records. By the end of 2003, DigiStamp had created more than 1 million timestamps for customers. Not a single DigiStamp timestamp has ever been successfully challenged. In 2005, [DigiStamp] commissioned and completed an external audit so that [its] timestamp meets the highest standards of strong legal evidence for authenticating computer data." Further "state and federal agencies, as well as foreign governments, have sought [DigiStamp's] advice and our products. From the Supreme Court of Ohio to the Department of Defense to the federal governments of Mexico and Australia, [DigiStamp] [is] recognized as reliable experts who offer sound thinking as well as a fine product." *See* https://www.digistamp.com/about-us/aboutus

11

DocuSign Envelope ID: 56A523AA-6808-4925-A95C-245A5CD523F2

### The PCAP Analyzer

74.     The sixth component of VXN is the PCAP Analyzer.  The PCAP Analyzer is software that: (a) retrieves stored PCAP files from Amazon S3; (b) extracts infringing transaction data from each PCAP; (c) verifies that each retrieved data piece is a part of the .torrent related file (and therefore distributing Plaintiff's copyrighted content) by using cryptographic hashes; and (d) organizes and summarizes the extracted infringing transaction data in a tabular format.

75.     Each line item within the PCAP Analyzer's tabular output *always* references an existing PCAP file.  In other words, there is a PCAP recording for every infringing transaction listed in the PCAP Analyzer's tabular output.  Thus, Plaintiff is always able to provide the original recording (the PCAPs) for each transaction listed in the tabular output.  The tabular format is merely a summary of the PCAP data and is created for better human readability.

76.     The PCAP Analyzer is connected to Maxmind® GeoIP2 Precision Services geolocation database.[18]

77.     Maxmind is "an industry-leading provider of IP intelligence and online fraud detection tools."[19]  "Over 5,000 companies use GeoIP data to locate their Internet visitors and show them relevant content and ads, perform analytics, enforce digital rights, and efficiently route Internet traffic."[20]  Maxmind is not "software" or technology, but instead it is a database.  Maxmind compiles information it receives from Internet Service Providers (ISPs) containing the city and state locations of the users of the ISPs and their respective IP addresses.  Maxmind maintains and updates this list weekly and sells access to it.

78.     VXN connects with the Maxmind database to determine both the Internet Service Provider that assigned a particular IP address as well as the city and state the IP Address traces to.  The PCAP Analyzer adds this information to the tabular output.

79.     The PCAP Analyzer runs continuously in real-time.

---

[18] *See* https://www.maxmind.com/en/geoip2-precision-services
[19] *See* https://www.maxmind.com/en/company
[20] *Id*.

DocuSign Envelope ID: 56A523AA-6898-4925-A95C-245A5CD523F2

80.     The PCAP Analyzer software is located on Amazon EC2.

81.     The PCAP Analyzer fulfills the same basic function as the well-known software called Wireshark and follows the same standards.

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of March, 2021.

By:_____

**DAVID WILLIAMSON**

# **<u>EXHIBIT B</u>**

1   Lincoln D. Bandlow, Esq. (CA #170449)
    lincoln@bandlowlaw.com
2   **Law Offices of Lincoln Bandlow, P.C.**
    1801 Century Park East, Suite 2400
3   Los Angeles, CA  90067
    Phone: (310) 556-9680
4   Fax: (310) 861-5550

5   Attorney for Plaintiff
    Strike 3 Holdings, LLC

6

7

8

9

10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

11   STRIKE 3 HOLDINGS, LLC,            | Case No.: 3:22-cv-03328-SI

12                    Plaintiff,        | **DECLARATION OF PATRICK PAIGE IN SUPPORT OF PLAINTIFF'S *EX-PARTE***

13   vs.                               | **APPLICATION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO**

14   JOHN DOE subscriber assigned IP address | **A RULE 26(f) CONFERENCE**
     98.42.130.181,

15                    Defendant.

16

17

18

19

20              [Remainder of page intentionally left blank]

21

22

23

24

25

26

27                                    i

28

Declaration of Patrick Paige in Support of Plaintiff's *Ex-Parte* Application
for Leave to Serve Subpoena Prior to a Rule 26(f) Conference
Case No. 3:22-cv-03328-SI

**EXHIBIT B**

# DECLARATION OF PATRICK PAIGE IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE

I, Patrick Paige, do hereby state and declare as follows:

1.    My name is Patrick Paige.  I am over the age of 18 and I am otherwise competent to make this declaration.

2.    This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

3.    I am a Managing Member at Computer Forensics, LLC a Florida based expert computer forensics company.

4.    For approximately 20 years, I have worked in the computer forensics industry.

5.    During this time, I have conducted forensic computer examinations for:

      a.  Broward County Sheriff's Office (BSO);

      b.  Federal Bureau of Investigation (FBI)

      c.  U.S. Customs and Border Protection (CBP);

      d.  Florida Department of Law Enforcement (FDLE);

      e.  U.S. Secret Service;

      f.  Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF); and

      g.  Various municipalities in the jurisdiction of Palm Beach County.

6.    I have taught over 375 hours of courses in computer forensics ranging from beginner to advanced levels.

7.    I have had students in my courses from various government branches, including: (a) sheriff's offices; (b) agents from the Federal Bureau of Investigation; (c) agents from the Bureau of Alcohol, Tobacco, Firearms and

1

Declaration of Patrick Paige in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference

CAND-1793-SANF

Explosives; (d) agents from the Central Intelligence Agency, and (e) individuals from other branches of government and the private sector.

8.    I have been called to testify as a fact and expert witness on numerous occasions in the field of computer forensics in both trial-level and appellate proceedings before state, federal, and military courts in California, Florida, Indiana, New Jersey, New York, and Pennsylvania.

9.    No court has ever refused to accept my testimony on the basis that I was not an expert in computer forensics.

10.    I have worked with a program called Wireshark since 2004.[1]  I first began using this software at the Palm Beach County Sheriff's Office within the Computer Crimes Unit.  In that role, I used Wireshark to conduct online investigations where individuals transmitted contraband images to me during online chat sessions.  In private practice, I have also used Wireshark to monitor network traffic while investigating network intrusion cases.  Later in my career I also used this software to examine PCAPs associated with BitTorrent transactions.

11.    In 2019, I obtained my certification as a Wireshark Certified Network Analyst.

12.    I was retained by Strike 3 Holdings, LLC ("Strike 3") to individually analyze and retain forensic evidence captured by its infringement detection system.

13.    In this case, Plaintiff claims that its infringement detection system, VXN Scan, recorded numerous BitTorrent computer transactions between the system and IP address 98.42.130.181 in the form of PCAPs.

---

[1] Initially, Wireshark was named "Ethereal" when it was released in 1998.  However, it was renamed "Wireshark" in 2006.

2

CAND-1793-SANF

14.     PCAP stands for "Packet Capture."  A PCAP is a computer file containing captured or recorded data transmitted between network devices.  In short, it is a recording of network traffic.

15.     Here, the PCAPs would evidence particular IP addresses connecting to VXN Scan and sending pieces of a computer file (which allegedly contains a piece of an infringing copy of Plaintiff's works) to VXN Scan.  The PCAP contains a record data concerning that transaction, including, but not limited to, the Internet Protocol (IP) Addresses used in the network transaction, the date and time of the network transaction, the port number used to accomplish each network transaction, and the Info Hash value that the VXN Scan used as the subject of its request for data.

16.     For this case, I received a PCAP from Strike 3 containing information relating to a transaction initiated on 04/27/2022 02:29:13 UTC involving IP address 98.42.130.181.

17.     I used Wireshark to view the contents of this PCAP.

18.     In reviewing the PCAP, I was able to confirm that the PCAP is evidence of a recorded transaction with IP address 98.42.130.181 initiated at 04/27/2022 02:29:13 UTC.  More specifically, the PCAP evidence shows that within that transaction, IP address 98.42.130.181 uploaded a piece or pieces of a file corresponding to hash value B24CF93F1B70BB20849E2ED96396F94C1963DA29 to VXN Scan.

19.     To be clear, the hash value B24CF93F1B70BB20849E2ED96396F94C1963DA29 recorded in the PCAP is the "Info Hash."  The "Info Hash" is *not* the hash value of the movie file itself.

20.     A hash value is an alpha-numeric value of a fixed length that uniquely identifies data.  Hash values are not arbitrarily assigned to data merely for identification purposes, but rather are the product of a cryptographic algorithm

3

Declaration of Patrick Paige in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference

CAND-1793-SANF

applied to the data itself.  As such, while two identical sets of data will produce the same cryptographic hash value, any change to the underlying data – no matter how small – will change the cryptographic hash value that correlates to it.

21.     The entire file being shared has a hash value (*i.e.*, the "File Hash"). Files are shared on BitTorrent by breaking them down into smaller pieces.  To find and re-assemble these pieces, *i.e.*, to download the file using BitTorrent, a user must obtain a ".torrent" file for the specific file that has been broken down into pieces.  Each ".torrent" file contains important metadata with respect to the pieces of the file.  When this data is put into the cryptographic algorithm, it results in a hash value called the "Info Hash."

22.     The "Info Hash" is the data that the BitTorrent protocol uses to identify and locate the other pieces of the desired file (in this case, the desired file is the respective file for the infringing motion pictures that are the subject of this action) across the BitTorrent network.

23.     Using the Info Hash, a user may collect all the pieces of the desired file (either from the user that shared the original piece or from other members of the BitTorrent swarm), to create the playable movie file.

24.     Once the user has the playable movie file, the user could: (1) calculate the movie's File Hash value, and (2) visually compare the playable movie file to its copyrighted work to determine whether they are identical, strikingly similar, or substantially similar.

25.     *Any* change in the underlying movie file (including converting the file to a different format, changing the resolution, etc.) will result in the algorithm calculating a different File Hash value.  As such, unless two files have the exact same File Hash, visual comparison of two files is the best method by which to determine whether one movie file is a visual copy of another.

Declaration of Patrick Paige in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference

CAND-1793-SANF

26. Based on the foregoing, my experience in working with peer-to-peer networks and BitTorrent protocols, and my review of the PCAP related to Work No. 1 in Exhibit A of the Complaint, I can conclude that the PCAP provided to me in this matter is evidence which supports the allegation that IP address 98.42.130.181 engaged in a transaction that included the transmission of a piece or pieces of a file, in response to a request for data relating to Info Hash value B24CF93F1B70BB20849E2ED96396F94C1963DA29, in a transaction initiated at 04/27/2022 02:29:13 UTC.

27. I have read David Williamson's declaration which describes the design and operation of VXN Scan which recorded the PCAP I examined. Based on his declaration, I believe the PCAP I reviewed is a true reflection of a transaction that took place and that the PCAPs which Strike 3 stores are unalterable.

28. Based on my experience in similar cases, Defendant's ISP Comcast Cable is the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address 98.42.130.181 during the time of the alleged infringement. Indeed, a subpoena to an ISP is consistently used by civil plaintiffs and law enforcement to identify a subscriber of an IP address.

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on this 1st day of June 2022.

**PATRICK PAIGE**

By: _____

5

Declaration of Patrick Paige in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference

CAND-1793-SANF

# EXHIBIT C

Lincoln D. Bandlow, Esq. (CA #170449)
lincoln@bandlowlaw.com
**Law Offices of Lincoln Bandlow, P.C.**
1801 Century Park East, Suite 2400
Los Angeles, CA  90067
Phone: (310) 556-9680
Fax: (310) 861-5550

Attorney for Plaintiff
Strike 3 Holdings, LLC

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>              Plaintiff,<br><br>vs.<br><br>JOHN DOE subscriber assigned IP address 98.42.130.181,<br><br>              Defendant. | Case No.: 3:22-cv-03328-SI<br><br>**DECLARATION OF SUSAN B. STALZER IN SUPPORT OF PLAINTIFF'S *EX-PARTE* APPLICATION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE** |

[Remainder of page intentionally left blank]

i

Declaration of Susan B. Stalzer in Support of Plaintiff's *Ex-Parte* Application
for Leave to Serve Subpoena Prior to a Rule 26(f) Conference
Case No. 3:22-cv-03328-SI

**EXHIBIT C**

**DECLARATION OF SUSAN B. STALZER IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

I, Susan B. Stalzer, do hereby state and declare as follows:

1.      My name is Susan B. Stalzer.  I am over the age of 18 and am otherwise competent to make this declaration.

2.      This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

3.      I work for Strike 3 Holdings, LLC ("Strike 3") and review the content of their motion pictures.

4.      I hold a Bachelor's degree and Master's degree in English from Oakland University.

5.      I have a long history of working in the fine arts, with an emphasis on writing, including having served as an adjunct professor of composition and literature.

6.      I am familiar with Strike 3's plight with online piracy and its determination to protect its copyrights.

7.      I was tasked by Strike 3 with verifying that each infringing file identified as a motion picture owned by Strike 3 on torrent websites was in fact, either identical, strikingly similar or substantially similar to a motion picture in which Strike 3 owns a copyright.

8.      Strike 3 provided me with digital media files to compare with Strike 3's copyrighted works.

9.      Based on the Declaration of David Williamson, I understand that Strike 3 obtained each digital media file using the VXN Scan's Torrent Collector and Downloader components.

10.      I viewed each of the digital media files side-by-side with Strike 3's motion pictures, as published on the *Blacked*, *Blacked Raw*, *Tushy*, *Tushy Raw*, and/or *Vixen* websites and enumerated on Exhibit A by their United States Copyright Office identification numbers.

1

Declaration of Susan B. Stalzer in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference

CAND-1793-SANF

11.     Each digital media file is a copy of one of Strike 3's motion pictures that is identical, strikingly similar, or substantially similar to the original work identified by their United States Copyright Office identification numbers on Exhibit A to the Complaint.

12.     Additionally, I used American Registry for Internet Numbers ("ARIN") to confirm that the ISP Comcast Cable did own Defendant's IP address at the time of the infringements, and hence has the relevant information to identify Doe Defendant.  A true and correct copy of a screenshot of the ARIN database containing Defendant's IP address is attached as Exhibit "1."

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this ⟨13⟩ day of ⟨June⟩, 202⟨2⟩.

**SUSAN B. STALZER**

By:_____

2

Declaration of Susan B. Stalzer in Support of Plaintiff's Motion for Leave to Serve a Third Party
Subpoena Prior to a Rule 26(f) Conference

CAND-1793-SANF

# EXHIBIT 1

| | |
|---|---|
| **Source Registry** | ARIN |
| **Kind** | Org |
| **Full Name** | Comcast Cable Communications, LLC |
| **Handle** | C07689718 |
| **Address** | 1800 Bishops Gate Blvd |
| | Mt Laurel |
| | NJ |
| | 08054 |
| | United States |
| **Roles** | Registrant |
| **Registration** | Wed, 18 Nov 2020 18:06:32 GMT (Wed Nov 18 2020 local time) |
| **Last Changed** | Wed, 18 Nov 2020 18:06:32 GMT (Wed Nov 18 2020 local time) |
| **Self** | https://rdap.arin.net/registry/entity/C07689718 |
| **Alternate** | https://whois.arin.net/rest/org/C07689718 |
| **Port 43 Whois** | whois.arin.net |

# **<u>EXHIBIT D</u>**

Lincoln D. Bandlow, Esq. (CA #170449)
lincoln@bandlowlaw.com
**Law Offices of Lincoln Bandlow, P.C.**
1801 Century Park East, Suite 2400
Los Angeles, CA  90067
Phone: (310) 556-9680
Fax: (310) 861-5550

Attorney for Plaintiff
Strike 3 Holdings, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | Case No.: 3:22-cv-03328-SI |
| Plaintiff, | **DECLARATION OF EMILIE KENNEDY IN SUPPORT OF PLAINTIFF'S *EX-PARTE* APPLICATION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULES 26(f) CONFERENCE** |
| vs. | |
| JOHN DOE subscriber assigned IP address 98.42.130.181, | |
| Defendant. | |

[Remainder of page intentionally left blank]

**EXHIBIT D**

i

Case No.: 3:22-cv-03328-SI

**DECLARATION OF EMILIE KENNEDY IN SUPPORT OF PLAINTIFF'S**
***EX-PARTE* APPLICATION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA**
**PRIOR TO A RULE 26(F) CONFERENCE**

I, Emilie Kennedy, do hereby state and declare as follows:

1.      My name is Emilie Kennedy.  I am over the age of 18 and am otherwise competent to make this declaration.

2.      This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

3.      I work for Plaintiff, Strike 3 Holdings, LLC ("Strike 3") as its in-house General Counsel.

4.      After Strike 3 received infringement data from VXN Scan identifying IP address 98.42.130.181 as infringing its works, the IP address was automatically inputted into Maxmind's Geolocation Database at https://www.maxmind.com/en/geoip-demo (the "Maxmind Database"), on 05-26-2022 15:41:46 UTC.

5.      Based on this search of the Maxmind Database, Maxmind determined that the IP address traced to a location in San Francisco, California, which is within this Court's jurisdiction.

6.      Prior to filing its Complaint, Strike 3 again inputted IP address 98.42.130.181 into the Maxmind Database and confirmed that IP address 98.42.130.181 continued to trace to this District.

7.      Finally, before filing this declaration, Strike 3 inputted IP address 98.42.130.181 again into the Maxmind Database and confirmed that it traces to San Francisco, California.  *See* Exhibit 1.

8.      Strike 3 has no interest in filing complaints in matters in which the offending IP address cannot be reliably geolocated to within a District Court's jurisdiction, and Strike 3 files separate cases across the various Federal District Courts of California as well as across the country.

1

Declaration of Emilie Kennedy in Support of Plaintiff's *Ex-Parte* Application
for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference

Case No. 3:22-cv-03328-SI

**EXHIBIT D**

## <u>DECLARATION</u>

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 30th day of June, 2022.

_____
**EMILIE KENNEDY**

2

Declaration of Emilie Kennedy in Support of Plaintiff's *Ex-Parte* Application
for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference
Case No. 3:22-cv-03328-SI

**EXHIBIT D**

# EXHIBIT 1

**MAXMIND**

Products ⌄   Support ⌄   Developers ⌄   Company ⌄   Blog   Contact

## GeoIP2 Databases Demo

Show Sidebar ›

IP Addresses

```
98.42.130.181
```

Enter up to 25 IP addresses separated by spaces or commas. You can also test your own IP address.

Submit

### GeoIP2 City Plus Database Results

| IP Address | Country Code | Location | Network | Postal Code | Approximate Coordinates* | Accuracy Radius (km) | ISP | Organization | D |
|---|---|---|---|---|---|---|---|---|---|
| 98.42.130.181 | US | San Francisco, California, United States, North America | 98.42.130.0/24 | 94110 | 37.7506, -122.4121 | 5 | Comcast Cable | Comcast Cable | |